JACKSON, *ex dem.* M'CLOUGHRY and others, *against* SKEELS.

The act of the 6th of *April*, 1790, relative to the military bounty lands, did not authorise a grant to a soldier who was not alive in *March*, 1783; so that nothing could pass by such a grant.

By the act of the 3d of *April*, 1807, (sess. 30.

THIS was an action of ejectment, brought to recover part of lot No. 10, in the town of *Genoa*, in the county of *Cayuga*, tried at the *Cayuga* circuit, in *June*, 1820, before Mr. Justice *Van Ness*. The plaintiff gave in evidence, a patent for lot No. 10, in *Milton*, now *Genoa*, and lot No. 16, in *Locke*, granted to *John M'Cloughry*, late a lieutenant in the revolutionary army, and his heirs and assigns forever, dated the 13th of *September*, 1790, and passed the secre-

ch. 114.) which vests the lands patented to *J. M.*, a deceased soldier, in his heirs, though aliens, in like manner as it would have descended to them, if they had been citizens of this state, at the time of his death, (1781) according to the law of descents of this state, it is intended that the heirs should take according to the law of descents at the time of passing the act; and the title of the heirs, as it respects any limitation, is to be deemed to have accrued from the time of passing the act.

tary's office, the 19th of *December*, 1791 ; and a special act of the legislature, passed the 3d of *April*, 1807, entitled, " an act relative to land granted to *John M'Cloughry*."

*Alexander Ross*, a witness for the plaintiff, testified, that he was born in *Longford* in *Ireland*, where he resided until the year 1774, when he came to this country; that he was well acquainted with Lieutenant *John M'Cloughry* and his family, at *Longford* ; that *J. M'Cloughry* came to this country about the year 1775, and entered the *American* army, and died in 1781, without issue ; that he left five brothers living in *Ireland*, at the time of his death, to wit, *Alexander*, *Patrick*, *Thomas*, *Gilbert*, and *William*, and a sister named *Margaret ;* the witness understood, that *Alexander*, the eldest brother, died about thirty years ago, without issue ; that *Patrick* died many years ago, leaving issue ; that *Thomas* also died without issue; that *Gilbert*, the fourth brother, as the witness had heard, came to this country, after the revolutionary war, and died about thirty years ago ; and that *William* and *Margaret* were still living in *Ireland* ; the witness testified as to the ages of the brothers of the deceased soldier, from information derived from persons who had come from *Ireland*, and from his own family, not from the father or mother of *J. M'C*. *D. Crawford*, another witness, testified, that *William* and *Margaret*, brother and sister of the deceased soldier, were living in *Ireland*, in 1801, and were unmarried. That *Patrick* died, leaving four children, *Alexander*, *Thomas*, *William*, and *Jane*, (lessors of the plaintiff;) that *Alexander*, the eldest son of *Patrick*, died on his passage to *New-York*, leaving four infant children, the eldest of which, *Thomas*, was now about thirty-two years of age. The defendant gave in evidence a warranty deed from *Gilbert M'Cloughry* and *Anne* his wife to *Daniel Avery*, dated *February* 24, 1796, for lot No. 10, excepting one hundred acres before sold to *M. Dow*. The defendant also read in evidence, a deed from *Daniel Avery* to *Philip Strong*, dated *December* 7, 1798, for fifty acres, the premises in question ; and deduced a title from *Strong* to the defendant. It appeared, that persons, under contract with *Avery*, had settled on the lot, in 1798 and 1799, but not on the part held by the defendant. *Walter*

*Wood* and *Glen Cuyler* testified, that they knew *Gilbert M'Cloughry*, about the year 1795 or 1797, when he appeared to be about fifty years of age ; that he lived some time in *Herkimer*, and afterwards in *Montgomery* county. The defendant read in evidence, " an act to enable certain persons therein named to purchase and hold estates within this state," passed *April* 5, 1803 ; and " an act to enable certain persons therein named to purchase and hold real estate," passed *April* 4, 1807.

The jury found a verdict for the plaintiff, subject to the opinion of the Court, on a case made ; and if the Court should be of opinion, that the plaintiff was not entitled to recover, then a judgment of nonsuit was to be entered.

*L. Beardsley*, for the plaintiff, contended, 1. That the patentee having died without heirs in this country, who could take, the land escheated, and became vested in the people of this state, without office found. (2 *Bl. Com.* 11. 107. *Wilson* v. *Berkley, Plowd.* 230.) The patentee, having come to this country before the declaration of independence, he became an *American* citizen ; and although the patent issued after his death, yet by operation of the acts of the legislature relative to the military bounty lands, the land is to be deemed vested in the soldier, as at the time of his death. (*L. N. Y.* sess. 26. ch. 88. 3 *Webster's* ed. 399. 3 *Caines' Rep.* 62—69. 2 *Johns. Rep.* 80. 14 *Johns. Rep.* 405.) Though an alien who purchases land, holds it until office found ; yet he cannot take and hold by *descent.* (1 *Johns. Cas.* 399. 3 *Johns. Cas.* 109. *Co. Litt.* 2. note 5. *Plowd.* 229, 230. 1 *Com. Dig. Alien*, C. 1.) Here were no legal representatives of the deceased soldier, who could take, at his death, under the act. The legislature have, by various acts and resolutions, given a construction to the common law in relation to these military lots, by treating them as escheats ; and there is nothing in the acts under which the patent issued, that can warrant the inference that the legislature intended that the lands should descend to alien heirs. The lands were given to the soldier, or his legal representatives. If lands are granted where they should escheat, it is a void grant. (*T. Raym.* 242.)

2. If, then, this land vested in the people, there was no-

thing to devest their right, previous to passing the act of the third of *April*, 1807, by which the land passed to the heirs of the patentee. This case does not come within the ninth article of the treaty with *Great Britain*, of 1794. (3 *Caines*, 68, 69. 2 *Johns. Cas.* 29. 4 *Johns. Rep.* 75.) The act of the third of *April*, 1797, authorising *Gilbert M'Cloughry* and others to take and hold real estate, granted no title. Nor does the act of the fourth of *April*, 1807, authorising certain persons therein named to purchase and hold real estates, apply to this case. That act is a mere transcript of the third section of the act of the 26th of *March*, 1802; and it cannot avail, for *Gilbert M'Cloughry* had no title when he conveyed; and if he ever acquired any, it was only for one fourth. Besides, the act was intended merely to defend *bona fide* purchasers, who had purchased from aliens, from any claims of the state; and, moreover, it was not passed until the day after the act under which we claim. Our rights could not be devested by a subsequent act. (4 *Johns. Rep.* 75.) The act of the 3d of *April*, 1807, expressly recognises the doctrine for which we contend, that the land had escheated, and became vested in the people of this state; it vests the land in the heirs of the patentee, in like manner as it would have descended, had they been citizens, at the time of his death; and it is made inheritable by the heirs, though aliens, according to the law of descents of this state.

3. It appears that *Gilbert M'C.* was the fourth son of the patentee's father; and the patentee died in *October*, 1781, when the *English* rule of descent was in force here, and the land therefore descended to the elder brother; and *Thomas M'C.*, at whose instance the act was passed, being the eldest son of the eldest brother of the patentee, the title vested in him. The lessors of the plaintiff are all the persons who could have any claim, except *Gilbert*, who, at most, could be entitled to one fourth only. But there is no evidence that *Gilbert* was living when the act of 1807 was passed. There is no proof of his being alive up to 1800; and after an absence of seven years, the death of a party may be presumed.

4. The statute of limitations ought not to be applied to this case. The statute did not begin to run until 1807,

before which time the lessor had no right of entry. Until 1807, the estate was vested in the people, and no *laches* can be imputed to them. (6 *Comyn Dig.* tit. *Prerog.* D. 71. *Bac. Abr. Prerog.* E. 6. 4 *Johns. Rep.* 202.)

*Cady,* contra. 1. The plaintiff's claim is barred by the statute of limitations. It was not the object of the act of 1807, to grant a new title to the heirs of the deceased soldier; but merely to remove their disability as *aliens,* and to place them in the same situation as if they had been citizens of this state. The act (1 *N. R. L.* 303. sess. 36. ch. 80.) vested the titles to bounty lands, in the case of a deceased soldier or officer, at the time of his death; and it is under that act only, that Lieutenant *M'Cloughry* could have any claim or title. The act requires, in case the land should have been settled under colour of a *bona fide* purchase, that the improvements should be paid for. The act of the 3d *April,* 1807, (sess. 30. ch. 114. 5 *Webst. Ed.* 124.) did not take away any disability of *Patrick* and his children. It is in favour of the brothers and sister of *John M'C.* then living in *Ireland.* This is apparent from the language of the preamble, which ought always to be taken into consideration, especially in construing a private act. The children and grandchildren of *Patrick,* who was then dead, are not within the scope of this act. The lessors, therefore, can recover only on the demises of *William* and *Margaret,* the only brother and sister of the patentee, then living.

Again; in 1803 there was a *bona fide* purchaser in possession under *Gilbert,* who would have been heir to the deceased soldier; and the evidence does not warrant the conclusion that he was dead in 1807, when the act under which the lessors claim passed. He appears to have been living in 1801 or 1802; and the presumption of death is not allowed, unless it is shown that inquiry has been made of the family of the party, or of persons who are the most likely to know whether he is alive or not. There was no evidence that any such inquiry was made.

2. By the act of the 5th *April,* 1803, the legislature intended that no person should be disturbed in his *bona fide* possession, after five years.

3. If *G. M'C.* entered at all, he entered as a tenant in common, and that entry did not alter the character of his possession. (13 *Johns. Rep.* 406.)

4. The statute of limitations commenced to run against *Alexander*, the eldest son of *Patrick*, in his lifetime ; and where an adverse possession has commenced in the life time of the ancestor, the operation of the statute is not prevented by the title descending to a person under a legal disability. (15 *Johns. Rep.* 169.)

5. On the 3d of *April*, 1797, an act was passed authorizing *Gilbert M'C.* to take and hold land, &c. He was thus relieved from the disability of alienage, and, in 1803, was capable of taking and holding lands as if he was a natural born citizen. So that when the act of 1803 passed, he was the only person capable of taking ; and he did take the land, and the defendant claims as a *bona fide* purchaser under him. The title of *Gilbert* could not be impeached for *alienage*, and was, therefore, perfect.

*E. Williams*, in reply, observed, that independent of the act of 1790, the land could not vest in the deceased soldier ; and the moment the patent issued, the title escheated. The act of the 3d of *April*, 1807, gives the title to the brothers and sister of the patentee in *Ireland ;* and that title is to be regulated according to the new statute of descents. If *P.* and his children are to be excluded, then *Gilbert*, who was not then in *Ireland*, ought to be excluded. But when the whole act is examined, it will be evident that it was intended to give the title to the *heirs at law* of the patentee, according to the new law of descents.

WOODWORTH, J. delivered the opinion of the Court. The act of the 6th of *April*, 1790, gave to letters patent for the military bounty lands, an operation from the 27th of *March*, 1783, so as to be deemed to have vested a title in the grantees from that time ; but this act was not considered as authorizing grants, when the person to be designated as the grantee was not alive in *March*, 1783. (*Jackson, ex dem. Sherwood*, v. *Phelps*, 3 *Caines*, 68.) The consequence is, that nothing passed by the grant to *John M'Cloughry ;* the

title to the lot remained vested in the state. The act of the 3d of *April*, 1797, (sess. 30. ch. 78.) authorized *Gilbert M'Cloughry* to hold lands within this state as a natural born citizen might do, but granted no title to this lot. The act of the 3d of *April*, 1807, after reciting the patent, vests the lands in the heirs of *John M'Cloughry*, the patentee, in like manner as it would have descended to them, if they had been citizens of this state at the time of his death, and be inheritable by their heirs, though aliens, according to the law of descents of this state, which I understand to be the law regulating descents at the time of passing the act. From the facts in the case, I take it for granted, that the father of *John M'Cloughry* was dead; if so, the land vested in *Gilbert*, *William*, and *Margaret*, the surviving brothers and sister, (if *Gilbert* was then living,) to each an undivided one fourth; and to *Thomas*, *William*, *Patrick*, and *Jane*, children of *Patrick*, a brother of the patentee, four fifths of the remaining one fourth; and to *Thomas*, *John*, *Elizabeth*, and *Jane*, children of *Alexander*, deceased, who was a son of *Patrick*, the residue of the one fourth : thus the lessors of the plaintiff are seized of three fourths of the premises, provided *Gilbert* was living on the 3d of *April*, 1807; but if he was not, and died without issue, then they were seised of the whole. I am inclined to think that the evidence is too slight to presume the death of *Gilbert* in 1807. *Alexander Ross*, a witness for the plaintiff, " *thinks he heard that Gilbert was dead about twenty years ago ;*" but it does not appear that any inquiry was made, or from whom the information was derived.

The act of *April* 4th, 1807, (sess. 30. c. 123.) does not interfere with the plaintiffs' claim for three fourths; it merely protects the title before conveyed to a citizen of this state, and then in his actual possession, so that it should not be questioned, by reason of the alienage of the person from or through whom such title might have been derived. If *Gilbert* acquired a title to one fourth by the act of *April* 3d, 1807, so far as respects that part, the act may apply.

It has been urged, that there was an adverse possession of more than twenty years. That will depend on the question, when did the plaintiffs' title first accrue? The title did

ALBANY,
August, 1821.

not pass from the state till the 3d of *April*, 1807, which is less than twenty years. The limitation of five years in the act of the 5th of *April*, 1803, by the seventh section of the act of *April* 7, 1806, (sess. 29. ch. 187.) is extended to 1823. On this ground, there is no bar to the right of recovery. The acts of 1803 and 1806 apply to the remedy only. To extend the time for bringing suits, rested in the sound discretion of the legislature, and did not impair any vested right of the defendant. The settlement on this lot appears to have been made under colour of a *bona fide* purchase from *Gilbert M'Cloughry*, on the 24th of *February*, 1797, and, consequently, the defendant is entitled to compensation for his improvements.

Judgment for the plaintiff, for three fourths.